**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**AMY SMITH HENDERSON**                              **CIVIL ACTION**

**VERSUS**                                                            **NO.  20-02045**

**ANDREW SAUL, COMMISSIONER OF**          **SECTION: "B" (4)**
**SOCIAL SECURITY ADMINISTRATION**

**REPORT AND RECOMMENDATION**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g).  The Commissioner denied claim for Disability Insurance Benefits.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.  The briefing in this matter was delayed due to COVID-19.

**I.    Background**

Plaintiff, Amy Henderson, filed an application for Disability Insurance Benefits ("DIB"). Tr. 13, 61, 158-59.  On October 18, 2018, she alleged that on September 14, 2017 that she became disabled due to torticollis: right occipital neuralgia; cervical myofascial pain; partial tear to the right rotator cuff; headaches; herniation at T12; neck and back arthritis; low back pain; and neck, back and leg muscle spasms.  Tr. 63-64, 80, 158.

The ALJ held a hearing on December 9, 2019. Tr. 30-60.  Henderson appeared and testified at the hearing. On January 13, 2020 the ALJ issued a  decision finding that Henderson was not disabled.  Tr. 10-28.  Henderson sought review by the Appeals Council which was denied on May 29, 2020.  The decision, therefore, was final, and Henderson sought review in this Court on July 17, 2020. Rec. doc. 1.

Henderson contends that substantial evidence does not support the ALJ's determination that she could perform her past relevant work as a private investigator, claims clerk, and file clerk. Henderson also contends that the ALJ's decision is not based upon substantial evidence because the ALJ failed to include mental limitations he found credible in the residual functional capacity ("RFC") and the hypothetical question to the vocational expert. Henderson finally contends that the ALJ erred when he concluded that her migraines/headaches were not a severe impairment.

## II.  __Standard of Review__

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues de novo, or substitute its judgment for that of the Secretary. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless she has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that she has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform her previous work as a result of her impairment, then factors such as her age, education, past work experience, and residual functional capacity must be considered to determine whether she can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps but shifts to the Secretary at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

## III.    Substantial Evidence Supports the ALJ's Determination that Henderson Could Perform her Past Relevant Work at Step 4

### A.    Past Relevant Work—Private Investigator, Claims Clerk, and File Clerk

Henderson contends that the ALJ erred when he concluded that her work as a private investigator constituted past relevant work even though she had not worked in that capacity for

more than fifteen (15) years.  Henderson points out that she worked as a private investigator from August 2003 through August 2004, more than sixteen (16) years ago. Tr. 305, 329.  Henderson also contends that even if her job as a private investigator constituted past relevant work that the vocational expert mis-identified it because it bears no similarity to the DOT description of "House Officer" used by the expert. Therefore, Henderson contends that ALJ's finding that she could perform her past relevant work is not based upon substantial evidence.

The Commissioner contends that the ALJ's decision that Henderson could perform her past relevant work is based upon substantial evidence. The Commissioner contends that the unimpeached vocational expert testimony along with Henderson's work record supported the ALJ's finding that Henderson could resume any of the five prior jobs which included the private investigator job.  The Commissioner contends that a finding that she was able to perform one of her past jobs was enough to support a finding regarding performance of past relevant work. Therefore, the Commissioner contends that the ALJ's finding that Henderson could perform past relevant work is based upon substantial evidence.

Past relevant work is defined as "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Henry v. Colvin*, 2015  WL 3902731 (W. D. La. 2015) Generally, ALJ's look to the Dictionary of Occupational Titles ("DOT") to determine the general duties of a particular job nationwide. *Parms v. Colvin,* 2015 WL 5176860 (M. D. La. 2015).

Past relevant work is work that you have done within the past fifteen (15) years, that was substantial gainful activity, and that lasted long enough for you to learn to do it. 20 C.F.R. § 404.1560(b)(1).  Past relevant work means work performed while insured. *Id.* As long as the

claimant can still perform her particular past job despite her impairments, she is not disable. 20 C.F.R. § 404.1560(b)(3).

The ALJ found that based upon the vocational expert's testimony that Henderson is capable of performing past relevant work as an auto insurance claims adjuster, claims clerk, data entry clerk, files clerk, and private investigator. Tr. 23. The ALJ found that the work in these positions does not require the performance of work-related activities precluded by Henderson's residual functional capacity. *Id.* The ALJ further determined that Henderson was able to perform as actually the job is generally performed. *Id.*

As an initial matter,  Henderson challenges only the finding that she was able to perform work as a private investigator and not that the ALJ also found that she was able to perform her four other previous jobs.

The ALJ found that Henderson pursuant to the vocational expert's testimony is capable of performing past relevant work as an auto insurance claims adjuster (light), claims clerk (sedentary), data entry clerk (sedentary), files clerk (light), and private investigator (light).  The ALJ held that this work does not require the performance of work-related activities precluded by Henderson's residual functional capacity.

Considering the period when Henderson worked as a private investigator, it was 15 years from the time she filed her claim for benefits. She last worked as a private investigator from August 2003 through August 2004. Henderson filed her claim for benefits on October 18, 2018, which is exactly fourteen (14) years and two (2) months from the date she ended her job as a private investigator. This claim was not denied until February 8, 2019. The ALJ issued his opinion on January 13, 2020.

Social Security Regulations and this circuit have determined the 15-year period look back starts from the date of adjudication. Titles II & XVI: *A Disability Claimant's Capacity to Do Past Relevant Work, in Gen.*, SSR 82-62 (S.S.A. 1982) ("When deciding whether a claimant is disabled under title II or title XVI, the 15-year period is generally the 15 years prior to the time of adjudication at the initial, reconsideration or higher appellate level" noting, however, "[w]hile the regulations provide that a claimant/beneficiary's work experience is usually relevant when the work "was done within the last 15 years," in some cases worked performed prior to the 15-year period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations."); *Gossett v. Barnhart*, 374 F. Supp. 2d 505, 510 (E.D. Tex. 2005) (finding fifteen years prior to the date of adjudication); *Bates v. Comm'r of Soc. Sec. Admin.*, No. 4:14-CV-404, 2016 WL 639290, at *3 (E.D. Tex. Jan. 26, 2016), *report and recommendation adopted*, No. 4:14CV404, 2016 WL 633927 (E.D. Tex. Feb. 17, 2016) (finding the same).

Here, the ALJ adjudicated the matter on January 13, 2020. Therefore, work performed before 2005 is improperly considered in past relevant work unless the ALJ considers the job's continuity of skills, knowledge, and processes. Because, in the case, the ALJ considered Plaintiff's work as a private investigator which ended prior to the 2005 cutoff, there is an error.  Therefore, the ALJ improperly consider Henderson's ability to perform her past relevant work as an investigator.

Notwithstanding, this error is <u>harmless</u> so long as Henderson was able to work one of her other four jobs, the ALJ's determination is supported substantial evidence. *See Fletcher v. Astrue*, No. 7:08-CV-33-AH, 2009 WL 1532113, at *5 (N.D. Tex. June 2, 2009) (holding ALJ's error in including position that Plaintiff did not perform as past relevant work was harmless where at least

one of the jobs identified could be perform) (citing *Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir.

2003) (setting forth harmless error standard in disability benefits context)).

Next, Henderson contends that the occupation identified by the vocational expert and

adopted by the ALJ bears no similarity to the description  Rec. Doc. 14.  Henderson contends that

the DOT code (DOT § 376.267-018) relates to the occupation of "house officer" and not "private

investigator", which she contends bears different duties and functions. *Id.*

However,  Henderson is misplaced in her contention. According to the DOT website Code

376.267.018  provides as follows:

> **376.267-018 INVESTIGATOR, PRIVATE (business ser.) alternate titles:**
> **detective, private eye; undercover agent; undercover operator**
>    Conducts private investigations to locate missing persons, obtain confidential
> information, and solve crimes: Questions individuals to locate missing persons.
> Conducts surveillance of suspects using binoculars and cameras. **Conducts**
> **background investigation of individual to obtain data on character, financial**
> **status, and personal history.** Examines scene of crime for clues and submits
> fingerprints and findings to laboratory for identification and analysis. Writes
> reports of investigations for clients. Reports criminal information to police and
> testifies in court. **May investigate activities of individuals in divorce and child**
> **custody cases.** May arrange lie detector tests for employees of clients or witnesses.
> ay escort valuables to protect client's property. May be employed in commercial or
> industrial establishments for undercover work [DETECTIVE (any industry) I] or
> be assigned to guard persons [BODYGUARD (personal ser.)].
> *GOE: 04.01.02 STRENGTH: L GED: R4 M3 L4 SVP: 5 DLU: 77*[1]

Henderson testified that as a private investigator that she served subpoenas, conducted

research at courthouses, completed on-line records searches, and drove a considerable amount of

the time.  Tr. 331. While Henderson was under the mistaken impression that the vocational expert

misapplied the wrong DOT code, Henderson clearly applied the wrong code.  The code for House

---

[1] *See* United States Department of Labor Office of Administrative Law Judges Law Library,  *OALJ Law Library,    DOT,    Service    Occupations    363.681-010    to    389.687-018*,    available    at https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT03B.

Officer is 376.367-018.  In contrast, the correct DOT code for private investigator is 367. 267-018, which is the one the vocational expert applied. Still, as this Court has already determined, since Henderson's work experience as a private investigator falls outside the fifteen-year period, it should not have been considered as past relevant work.

**B.  Claims Clerk and Past Relevant Work**

Next, Henderson contends that her work as a claims clerk,[2] which was a job she performed for only three months, does not constitute past relevant work because she did not perform it long enough to learn how to do it. Rec. doc. 14.  In contrast, the Commissioner contends that Henderson does not dispute that she learned the "claims clerk" job  within three months, and she has failed to allege an inability to do this job. Rec. doc. 15.

The Specific Vocational Preparation ("SVP") is the amount of time needed to learn the techniques, acquire the information, and develop the facility for average performance in a specific job-worker situation. An insurance claims clerk is categorized as an SVP 4. An SVP of 4 indicates that it could take from 3-6 months for the average  person to learn  the job.[3]  While Henderson worked in the position for only 3 months, she does not dispute that she learned the job.  While Henderson only worked the minimum amount of time for this position as contemplated by the SVP, this does not mean that she was not skilled or trained to do the job.

**C.  File Clerk/Data Entry and Past Relevant Work**

Next, Henderson contends that although the ALJ concluded that she worked as a file clerk, she never performed in this job. Instead, she contends that she worked one job comprised of both

---

[2] CLAIMS CLERK II (insurance) alternate titles: loss-claim clerk
Prepares reports and insurance-claim forms for damage or loss against insurance companies: Obtains information from insured to prepare claim form. Forwards report of claim or claim form to insurance company. Acts as intermediary between company and insured. May assist in settling claims.
GOE: 07.04.02 STRENGTH: S GED: R3 M3 L3 SVP: 4 DLU: 77

[3] *See* https://skilltran.com/index.php/support-area/documentation/freq-counts/129-freq-counts-svp.

data entry and filing.  Henderson contends that because the vocational expert identified two separate DOT codes for this one job—one for data entry and one for file clerk, it was a composite job and could not be evaluated as a step 4 denial under the prong of " as generally performed in the national economy."  Henderson points out that the ALJ's opinion is silent on this point.

The Commissioner contends that Henderson's argument is conclusory, and she fails to allege that she cannot do either job or that she has actually been doing the work without interruption. Rec. doc. 15.  Specifically, the Commissioner contends that Henderson has been working in this capacity for about six hours a day since 2015. *Id.*

According to the record, Henderson jobs included data entry, receptionist, claims generalist, and private investigator.  *See* Tr. 74, 305, 329.  There is no indication that she worked as a file clerk and yet the vocational expert and the ALJ found that working as a file clerk was one of her past jobs.  This is clearly error.  However, it is harmless because as long as she was able to work one of her other four jobs, the ALJ's determination is supported substantial evidence. *See Fletcher v. Astrue*, No. 7:08-CV-33-AH, 2009 WL 1532113, at *5 (N.D. Tex. June 2, 2009) (holding ALJ's error in including position that Plaintiff did not perform as past relevant work was harmless where at least one of the jobs identified could be perform) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (setting forth harmless error standard in disability benefits context)).

**IV.** **The ALJ's RFC Ruling is Based Upon Substantial Evidence at Step 5**

**A.** **Incorporation of Mental Limitations in RFC**

Henderson contends that the ALJ failed to include mental limitations previously found credible in his RFC and the hypothetical question posed to the Vocational Expert.  Henderson contends that the ALJ explicitly found mild functional limitations in all areas and yet he failed to adopt any mental limitations in the RFC.  She further questioned the sufficiency of the vocational

expert hypothetical warranting a remand. Henderson contends that any suggestion that the ALJ found no limitation in mental functioning would be a misrepresentation of the record. She contends that the regulations define mild limitations as a limitation that restricts the claimant's ability to function independently, appropriately, or effectively on a sustained basis. *See* Rec. doc. 14, p. 4.

The Commissioner contends that not every non-severe limitation should be included in the RFC determination, only limitations that impact her ability to work belong in the RFC. The Commissioner further contends that Henderson does not dispute that her mental conditions were "mild" under each prong of the psychiatric review technique (PRT). R. Doc. 15, p. 9. The Commissioner contends that the regulations do not require that non-severe impairments be included in the RFC. The Commissioner further contends that the ALJ did not include her mild mental impairments in her RFC because they were non-limiting impairments. *Id.* The Commissioner further contends that Henderson failed to pursue mental health care, provide documentation of psychiatric services, medication for mental health or hospitalizations, and it was her burden to provide evidence of the disabling mental condition.

The ALJ found that Henderson's medically determinable mental impairment of depression does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore non-severe. Rec. doc. 11, p. 20, Tr. 16. He noted that Henderson did not testify regarding an inability to perform basic work activities due to depression, primarily indicating that loss of focus is due to medication for muscle spasm. *Id.* He found that that although she testified to taking an antidepressant that it appeared to have prescribed for pain and was in the process of weaning from the medication. *Id.* He found that she generally was able to carry out her work

activities sufficiently to satisfy her long-term employer and depression was not mentioned as a disabling factor in her brief. *Id.*

The ALJ held that Henderson had no more than mild limitation in the four broad functional areas in understanding, remembering or applying information; in interacting with others; in concentrating, persisting or maintaining pace; and in adapting or managing oneself. *Id.* The ALJ further held that because Henderson's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in Henderson's ability to do basic work activities, it is non-severe. Tr. 17.

Under the regulations, an impairment is not severe if it does not significantly limit the claimants physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); 20 C.F.R. § 404.1520(c). These regulations define the threshold of impairment severity as "significantly limits your physical or mental ability to do basic work activities." *Id.* The Fifth Circuit has construed these regulations as setting forth the following standard of non-severity: "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (internal brackets omitted) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984) (per curiam)).

Henderson contends that because her past relevant work is either classified as skilled or semi-skilled that the ALJ should have included her mental limitations in the RFC despite the ALJ finding that her limitations were mild.

When making an RFC determination, the ALJ considers the medical opinions in the claimant's record and the relevant evidence received, and then weighs the credibility of the evidence accordingly. 20 C.F.R. §§ 404.1520(b), 404.1527(b). When assessing the RFC, an ALJ must consider all medically determinable impairments, including those determined to be not severe. See 20 C.F.R. § 404.1545(a)(2).Opinions from treating physicians are generally entitled to significant weight, but the opinions from examining physicians must also be considered. *See Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017).

Also, when assessing a claimant's impairment that involves mental capacity at Step Three, an ALJ must conduct a psychiatric review technique analysis (PRT) to rate the degree of functional limitations in four areas: the ability to "understand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and manage oneself." *See* 20 C.F.R. § 416.920a(c)(3).

In this case, the psychiatric review technique analysis (PRT) indicates that regarding 12.04 Depressive Disorder there was insufficient evidence to substantiate the presence of the disorder. He noted that she had a report of depression but there was no objective findings or treatment to support a potential mentally determinable impairment.

Here, the ALJ did not make specific findings as to Plaintiff's mental limitations nor outline how her "mild" mental limitations affected her ability to concentrate, persist, or maintain pace. The ALJ did, however, note his concurrence generally with the opinion of the Disability Determination Services reviewing psychologists that Henderson does not have a severe mental impairment and noted that their opinions were highly probative on this issue.  Actually, the psychologists found that there was no evidence of a mental impairment due to depression and even Henderson's counsel during the administrative hearing made no effort to develop the record

regarding depression. *See* Tr. 34-35. The ALJ found that there was a mild impairment although non-severe. There was no evidence, due to the lack mental health treatment records or even testimony from Henderson, that would allow for the severe rating of her functional limitations about which Henderson now complains.

Henderson also points to the fact the omission of mild mental functional limitations is "absolute legal error when the issue involves returning to semi-skilled or skilled past relevant work." R. Doc. 14, p. 8. In arguing such, she relies upon several cases for the proposition. *See Nolen v. Berryhill*, No. 416CV00153SEBDML, 2017 WL 3575822, at *6 (S.D. Ind. July 26, 2017), *report and recommendation adopted*, No. 416CV00153SEBDML, 2017 WL 3535202 (S.D. Ind. Aug. 17, 2017)(Court finding error where ALJ failed to consider medical evidence of mental limitations in RFC assessment); *Kich v. Colvin*, 218 F. Supp. 3d 342, 357 (M.D. Pa. 2016) (finding error where ALJ failed to consider medical evidence of mental health related limitations in RFC assessment despite extensive evidence); *Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1021 (D. Ariz. 2019) (finding ALJ improperly failed to include mental limitations in claimant's RFC); *Richardson v. Saul*, No. 5:20-CV-38-REW, 2021 WL 37705, at *3 (E.D. Ky. Jan. 5, 2021) (legal error to fail to include non-severe mental limitations in PRT); *Lydon v. Comm'r, Soc. Sec. Admin.*, No. 18-CV-01526-MSK, 2019 WL 3812379, at *4 (D. Colo. Aug. 14, 2019) (finding ALJ RFC insufficient where he failed to account for all impairments to include mental impairments).

These cases, however, are distinguishable from the instant case. In the cases cited by Henderson, the ALJs were aware of the claimant's mental disorder but did not evaluate the limitations and include them in the RFC by looking at the medical evidence in the record. In contrast, the ALJ in this case considered all of the medical evidence. He considered and noted her

testimony regarding being on antidepressants and weaning off them. He noted that she on occasion reported depression but continued to work. Although not noted by the ALJ, the PRT actually found that depression was not an impairment and that there were no records of treatment for depression to assess.

Henderson provides no citation to personal, professional, medical testimony or evidence pertaining to the issue whether the job of automobile insurance claim adjuster, claims clerk, data entry clerk, file clerk and private investigator require unimpaired skills of ability to concentrate, persist or maintain pace necessarily, and even a mild mental impairment prevents such work. The Court's review of the record did not reveal any supporting evidence relevant to this contention, nor any legal or regulatory support. Consequently, this Court's review must focus on determination whether the ALJ considered Henderson's mild mental impairment in making his RFC determination and whether the substantial evidence supported the ALJ's determination that Henderson was able to perform the work in light of this mild mental impairment.

The record shows that the ALJ noted that Henderson was able to decrease antidepressants and wean off over a two to three-month period. He also noted that she could play video games about two to three hours per week. He noted that Henderson did not testify regarding an inability to perform basic work activities due to depression, primarily indicating that loss of focus was due to medication for muscle spasm. He noted that although she was taking an anti-depressant, it was prescribed for pain that she was weaning from the medication. Rec. doc. 11, Tr. 44. There is no evidence of a record of treatment for depression, or counseling or evidence of current objective findings of depression and nor does Henderson point to any. *See* Rec. doc. 11, Tr. 409-424; 425-436; 852-923; 924-952; 953-963; 953-963; 964-996.

Consistent with SSR 96 – 8 the ALJ's RFC assessment "must be based on all of the relevant evidence in the case record," which includes "[m]edical history, [m]edical signs and laboratory findings, [t]he effects of treatment, [r]eports of daily activities, [r]ecorded observations, [m]edical source statements, [and] effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." Titles II & XVI: *Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996). The ALJ properly assessed Henderson's functional limitations noting her claims of impairments intensity, persistence, and limiting effects were inconsistent with the record, e.g., the lack of treatment, negligible impact on her ability to work, and that objective medical evidence was devoid of treatment for depression. Therefore, the ALJ's RFC assessment was proper and based upon substantial evidence.

## B.    Composite Job of Data Entry/File Clerk

Again, the Court addresses the Plaintiff's contention that the Vocational Expert identified two separate DOT codes for one composite job--one for data entry and one for file clerk. Here, the Court addresses the issue not in terms of whether the ALJ properly considered it past relevant work at Step 4, but whether the ALJ properly considered it in his RFC assessment at Step 5.

The record shows that Henderson worked as a data entry clerk from September 2012 through October 2018.[4]  Rec. doc. 11, Tr. 74.  In her capacity as a data entry clerk, Henderson also was responsible for sorting and filing records.[5]  The VE classified Henderson's job as file clerk

---

[4] TITLE(s): DATA ENTRY CLERK (clerical) alternate titles: data entry operator

Operates keyboard or other data entry device to enter data into computer or onto magnetic tape or disk for subsequent entry: Enters alphabetic, numeric, or symbolic data from source documents into computer, using data entry device, such as keyboard or optical scanner, and following format displayed on screen. Compares data entered with source documents, or re-enters data in verification format on screen to detect errors. Deletes incorrectly entered data, and re-enters correct data. May compile, sort, and verify accuracy of data to be entered. May keep record of work completed. GOE: 07.06.01 STRENGTH: S GED: R3 M2 L3 SVP: 4 DLU: 89
[5] TITLE(s): FILE CLERK I (clerical)

and data entry. Rec. doc. 11, Tr. 52.  He noted that her work as a data entry operator (DOT 203.582-054) and file clerk (DOT 203.387-034) were both sedentary. The VE further testified that Henderson could return to all of the jobs identified as sedentary, which the file clerk and data entry jobs both were.

The Commissioner defines a composite job as having significant elements of two or more occupations, and, as such, has no counterpart in the Dictionary of Occupational Titles. *Holland v. Colvin*, No. 3:14-CV-2964-K-BH, 2015 WL 5437727, at *8 (N.D. Tex. Aug. 31, 2015), *report and recommendation adopted*, No. 3:14-CV-2964-K, 2015 WL 5439051 (N.D. Tex. Sept. 15, 2015), *aff'd*, 652 F. App'x 266 (5th Cir. 2016). Therefore, an ALJ may consult a VE to determine the proper characterization of the claimant's past work, and whether she can return to that past work as she actually performed it or whether she can perform the work as it is generally performed in the national economy. *See id.*; *Semien v. Colvin*, No. 12–02179, 2013 WL 3778984l, at *6 (W.D.La. July 17, 2013).

The Fifth Circuit has not specifically addressed the interpretation of SSR 82–61 and whether it is proper to segregate the different jobs of a composite job to determine whether a claimant has the RFC to return to past relevant work doing one of those jobs. Neither has any other circuit court. Although some district courts have addressed the issue, "the case law . . . is not uniform, and provides no solid answers with regard to how much bifurcation of jobs can occur without error." *See Thomas v. Comm'r of Soc. Sec. Admin.*, No. 1:02–CV–925, 2005 WL 588752,

---

Files records in alphabetical or numerical order, or according to subject matter or other system: Reads incoming material and sorts according to file system. Places cards, forms, microfiche, or other material in storage receptacle, such as file cabinet, drawer, or box. Locates and removes files upon request. Keeps records of material removed, stamps material received, traces missing files, and types indexing information on folders. May verify accuracy of material to be filed. May enter information on records. May examine microfilm and microfiche for legibility, using microfilm and microfiche viewers. May color-code material to be filed to reduce filing errors. May be designated according to subject matter filed, such as Change-of-Address Clerk (clerical); or according to material filed, such as File Clerk, Correspondence (clerical).

at * 7 (E.D.Tex. Jan. 3, 2005). Some cases have found that a claimant who is able to perform either or all of the jobs composing her past relevant work as it is performed in the national economy is capable of performing her past relevant work. *See, e.g., Behne v. Colvin*, No. 2:13–cv–086, 2014 WL 4802451, at *4–5 (N.D.Tex. Sep.26, 2014) (finding the ALJ did not err in finding the plaintiff capable of performing past relevant work as an administrative assistant where she was determined to have been performing a job as both an administrator and a bartender); *Semien*, 2013 WL 3778984l, at *6 (holding the ALJ did not err in finding the plaintiff could perform past relevant work as a receptionist as it is generally performed in the national economy where the past job was composed of both receptionist and an inventory clerk work). These cases concluded that even though the claimant was incapable of performing the past relevant work as actually performed, she was capable of returning to past relevant work as to one or more of the jobs as they are actually performed in the national economy. *See Behne*, 2014 WL 4802451, at *4; *Semien*, 2013 WL 3778984l, at *6.

In this case, Henderson does not contend that she was not able to work as a file clerk or data entry clerk. At the time of the administrative hearing, Henderson was actually working in the data entry position, which also required her to work as a file clerk.  Because there is not one DOT listed position that defines the job, the VE looked at the two DOT positions and determined that they are both sedentary.

The record indicates that Henderson worked at least six (6) hours out of an (8) hour day and she would be required to file documents that were brought over to the file cabinet for her to file.  Rec. doc. 11; Tr. 46.  While there is no mention by the ALJ that the job is a composite job, this does not constitute error as she was actually performing her past relevant work as a data entry/file clerk.  Further, the VE testified that in his opinion she could actually do the job she was

doing and the ALJ found that she could perform the job based upon the actual testimony of the claimant and the VE.  The Court finds that the ALJ's opinion that she could work as a data entry and file clerk, a past relevant work, is based upon substantial evidence.

### C. **Reasoning Level- SVP and RFC**

Henderson next contends that her past relevant work required her to have a higher reasoning level, which is the minimal ability that she needs to do the job.  She contends that her past relevant work requires an ability level ranging from 3-5.  For example, she points out that the claims adjuster job requires a reasoning level of five and that her "mild mental limitations adopted by the ALJ in his PRT" would have impacted her ability to perform such past work. Henderson also contends that her remaining past jobs were simpler but still require a reasoning level of 3 or more mental capacity, and that the ALJ failed to explain how she could perform high reasoning work with her mental limitations.

The Commissioner contends that the case law relied upon by Henderson is irrelevant to the subject case and ignores the fact that she presented no mental health documentation of any treatment.  The Commissioner contends that it was Henderson's burden to prove her disability and establish that she had a mental impairment lasting at least twelve months that affected her ability to work.

Among the sources of evidence, the Commissioner can rely on at Step 5 are Vocational Experts and the Department of Labor's Dictionary of Occupational Titles (including its supplement, the Selected Characteristics of Occupations (SCO)). 20 C.F.R. § 404.1566(d)-(e). Vocational Experts assess whether jobs exist for a person with the claimant's precise abilities. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608 (E.D. Tex. 2009). They also assist in determining

complex issues, such as the transferability of a claimant's past work skills and the specific occupations in which they can be used. 20 C.F.R. § 404.1566(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert.").

The DOT comprises a categorical listing of job titles in the United States, along with descriptions of the maximum requirements for each job, including the associated exertion levels and reasoning abilities. *Gaspard v. Soc. Sec. Admin.*, 609 F. Supp. 2d 607, 609 (E.D. Tex. 2009). The Commissioner recognizes the DOT and the SCO as authoritative, and routinely relies on them "for information about the requirements of work in the national economy." SSR 00–4P, 2000 WL 1898704, at *2.

It is clear that an ALJ may rely on either source of information—VE testimony or the DOT—when determining whether a claimant can make an adjustment to other work at Step Five. *See* 20 C.F.R. § 404.1566(d)-(e). Given their differing degrees of specificity, it is foreseeable (if not inevitable) that a vocational expert's opinion of a claimant's ability to do other work may conflict with the DOT's requirements for particular jobs. These conflicts occur frequently enough that the Commissioner has issued an interpretive ruling on the subject. *See* SSR 00–4p, 2000 WL 1898704, at *2.

An ALJ may in appropriate cases give more weight to a Vocational Expert's testimony than to the DOT. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). That rule makes sense considering the DOT provides only standardized job information, whereas VE testimony is tailored to an individual claimant's work skills and limitations as relayed by the ALJ through hypothetical questions. *Gaspard*, 609 F. Supp. 2d at 613. But neither source automatically trumps the other,

and both initially have equal effect. *Id.* (citing *Romine v. Barnhart*, 454 F. Supp. 2d 623, 626 (E.D. Tex. 2006)).

When the conflict is tangential, implied, or indirect, and it did not undergo adversarial development at the administrative hearing, the VE's testimony may be accepted and relied upon by the ALJ without resolving the later-proffered conflict provided the record reflects an adequate basis for doing so. *Carey*, 230 F.3d at 146.

The Commissioner's policy concerning conflicts between VE testimony and the DOT provides that in all cases "the adjudicator has an affirmative responsibility to ask about any possible conflict between . . . VE . . . evidence and information provided in the DOT." SSR 00–4P, 2000WL 1898704 at *4. However, multiple courts have found no direct conflict between a limitation to simple, repetitive tasks with one to three-step instructions (or unskilled work) and jobs requiring a reasoning level of three. *See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) ("no such conflict appears to exist" between job requiring reasoning level of 3 and claimant's limitation to simple, unskilled work involving concrete instructions); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (conflict not so obvious between limitation to simple or unskilled work and jobs requiring a reasoning level of 3); *Hurtado v. Comm'r of Soc. Sec.*, 425 Fed. Appx. 793, 794-95 (11th Cir. 2011) (limitation to simple, routine tasks do not conflict with reasoning level of 3); *Morris v. Comm'r of Soc. Sec. Admin.*, 421 Fed. Appx. 693, 694 (9th Cir. 2011) (reasoning level 3 did not require complex tasks in excess of RFC for unskilled work).

In the absence of any direct or apparent conflict, the ALJ's reliance on the VE's testimony is not reversible error. There is no conflict in this case. While the data entry /file clerk is a level 3, she was performing the job according to her testimony. Further, there is no direct conflict with her job requiring a reasoning level of 3. Further, Henderson's counsel failed to suggest even an

existence of any issue with the reasoning level of the job such that if there was a problem with the SVP.  Counsel cannot at this point raise the issue now since it was not developed in the adversarial context during the administrative hearing.

## V.   **Henderson's Headaches**

Henderson complains that the ALJ committed error when he decided that her migraines/headaches were not severe.  Rec. doc. 14, p. 11-12. Henderson contends that the ALJ also failed to support his finding with reasoned analysis and violated the Agency's own *de minimis* standard for severe impairments. *Id.* Henderson contends that the ALJ made significant errors in finding that her migraines/headaches were not severe because his finding that there was no indication of the severity of her headaches/migraines as reflected in her log is contrary to fact. *Id.*

Henderson contends that the ALJ mischaracterized her diagnosis because her headaches were caused by a severe impairment such as joint dysfunction and he should have accommodated for it.  Henderson also contends that the ALJ erred when he found that she had not received a diagnosis for headaches, no clinical findings, and failed to consider the difficulty she had in obtaining approval for further occipital nerve blocks from her insurer. Henderson also contends that the medical records are replete with evidence that she suffered with "migraines/headaches" and their impact on her ability to work. Rec. doc. 14,  p. 13.

The Commissioner contends that the ALJ assessed the record as a whole and that the record supports his determination at Step 2 that Henderson's headaches or migraines were not severe and that her headache calendar and the medical records fails to show the pain, duration, or location, which are needed to establish severity. Rec. doc. 15, p. 12. The Commissioner contends that Henderson's headaches were infrequent and well controlled and fails to point to record evidence that shows otherwise. Rec. doc. 15, p. 11. The Commissioner contends that the Step 2

determination that Henderson's headaches were not a severe impairment at most was harmless error because the ALJ's analysis went beyond the Step 2 and made the determination at Step 4. The Commissioner contends that Henderson does not have "primary headache disorder" and only alleged that headaches would preclude the full-time work at step five, at contention they argue is supported by her attorney's testimony at the hearing. Rec. doc. 15, p. 12.

The ALJ  noted that Henderson complained of migraines and noted that the disorder was listed in the medical records and that there is no record of treatment by a neurologist although she was referred to neurology by her pain management physician.  Rec. doc. Tr. 14.   He noted that she did have a brain MRI due to facial spasms rather than as a diagnostic tool for headache disorder. He also observed that the MRI was grossly normal.  *Id.*

The ALJ noted that Henderson submitted a medical treatment and symptoms calendar she prepared and the first time it mentioned migraine is March 2018 and she reported 1-5 migraines per month, with none some months, and a few more per month during some others. Rec. doc. 11, Tr.  16.  He noted that, however, there was no specific description of migraine (pain level, duration, location, etc.) in the chart notes or in the calendar. *Id.*

He further noted Henderson's testimony that her headaches were more likely muscle-related and brought on by activity and not " classic migraines." *Id.*  The ALJ  held that there was no indication in the record that Henderson has substantial limitations as a result of migraine, she does not take medication for migraines, and did not describe any relieving factors.  *Id.* The ALJ noted further that Henderson has not be diagnosed with primary headache disorders. *Id.*

The ALJ, thereafter, conducted an exhaustive review of the medical records and noted that, regarding Henderson's complains of headaches, she noted Botox decreased her pain level from 7/10 to 4/10 but that it did not rid her of spasms or migraines. *Id.*, Tr. 18.  He noted that she could

only get Botox treatment on a limited basis due to toxicity. *Id.*  He noted her testimony that she saw Dr. Harrison for migraines who was not a specialist and that she took only baclofen and gabapentin for the muscle-related migraines. *Id.*

Henderson, according to the ALJ, testified that migraines were brought on by activity.  He noted that in November 2017, she reported headaches due to neck pain and ringing in her ears.  *Id.* He noted further that in September, two days after an auto accident, the claimant complained of severe neck pain and radiating back pain as wells as headache.  *Id.* He noted that in November, the Northshore Clinic's chart notes indicate that Henderson had excellent results from Botox in terms of upper back pain but still reported occipital headache and low back pain starting a few days earlier after she reduce baclofen. *Id.* at. 20. The ALJ noted that by March 2018, Henderson reported only recurrent cervical pain and occasional headaches and her right shoulder was back to baseline after the PRP injection. *Id.*

He pointed out that in July 2018, Henderson complained to Dr. Joliff about leg spasms, and he reported there was no evidence of degenerative disc disease.  She also complained of shoulder pain but with PRP and PT her shoulder had improved.  He also pointed out that with nerve blocks and Botox her neck pain and headaches had improved. *Id.*, Tr. 20.  The ALJ noted, according to Henderson, her neck pain still caused some headaches and that she had occasional bilateral low back pain in her leg which were helped with steroids for about six months.  *Id.*

The ALJ noted that in December 2018 that Henderson reported eye swelling to Dr. Harrison from a headache radiating into the right eye.  He noted her complaint that tilting her head caused her eyelid to twitch. *Id.*, Tr. 21.  The diagnosis that day was headache and facial weakness and she was referred to neurology and Dr. Harrison performed lower thoracic trigger point injections and a right occipital nerve block.

An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A claimant must make only a *de minimis* showing to advance beyond step two. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). Ms. Henderson's argument fails as a matter of law because it is well established that an ALJ does not commit reversible error at step two if he finds at least one severe impairment:

> [A] claimant need only establish, and an ALJ need only find, one severe impairment. See The reason is grounded in the Commissioner's regulation describing step two, which states: "If you do not have a severe medically determinable physical or mental impairment ... or a combination of impairments that is severe . . ., we will find that you are not disabled. By its plain terms, the regulation requires a claimant to show only "a severe" impairment—that is, one severe impairment—to avoid a denial of benefits at step two. As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.

*Allman v. Colvin*, Soc. Sec. Rep. P 15485C (10th Cir. 2016) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir. 2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"); 20 C.F.R. § 404.1520(a)(4)(ii)).

Here, the ALJ found five other impairments were severe and proceeded through the remaining steps in the sequential evaluation process. Thus, the ALJ's failure to find Ms. Henderson's headaches severe at step two is not reversible error and does not warrant remand.

Moreover, contrary to Henderson's contention, the record does not support Henderson's suggestion that her headaches were a severe impairment. Henderson contends that the ALJ was required to accommodate all limitations arising from her joint dysfunction, which included her headaches. However, she fails to point to an instance where he failed to do so. The ALJ considered

the limitations and reviewed the medical records that illustrated how the medical treatment impacted her complaints of headaches.

Next, Henderson contends that the ALJ erred when he found that she was not diagnosed with "primary headache disorder." Tr. 16. According to Henderson, the diagnoses was made on page 515 of the Transcript. Tr. 515. However, Henderson is not correct. There is no 784.00 code reference on page 515 of the Trial record. There is a code of 784.00 referenced on page 513 of the Trial record. However, a diagnosis code for 784.00 refers to a billing code for symptoms involving the head and neck characterized by the following:

- A disorder characterized by a sensation of marked discomfort in various parts of the head, not confined to the area of distribution of any nerve.
- Almost everyone has had a headache. Headache is the most common form of pain. It's a major reason people miss days at work or school or visit the doctor. The most common type of headache is a tension headache. Tension headaches are due to tight muscles in your shoulders, neck, scalp, and jaw. They are often related to stress, depression, or anxiety. You are more likely to get tension headaches if you work too much, don't get enough sleep, miss meals, or use alcohol. Other common types of headaches include migraines, cluster headaches, and sinus headaches. Most people can feel much better by making lifestyle changes, learning ways to relax, and taking pain relievers. Not all headaches require a doctor's attention. But sometimes headaches warn of a more serious disorder. Let your health care provider know if you have sudden, severe headaches. Get medical help right away if you have a headache after a blow to your head, or if you have a headache along with a stiff neck, fever, confusion, loss of consciousness, or pain in the eye or ear.
- Pain in the cranial region that may occur as an isolated and benign symptom or as a manifestation of a wide variety of conditions.
- Pain in various parts of the head, not confined to the area of distribution of any nerve.
- The symptom of pain in the cranial region. It may be an isolated benign occurrence or manifestation of a wide variety of headache disorders.[6]

It is unclear whether primary headache disorder is different from her complaint of a headache on a given day or whether Henderson's interpretation of a billing code is accurate. Even though unclear, it is also not consequential because the ALJ did in fact evaluate the evidence of

---

[6] *See* http://www.icd9data.com/2012/Volume1/780-799/780-789/784/default.htm.

record regarding her headaches. Assuming that Henderson's interpretation is correct, the ALJ's opinion is based upon substantial evidence.

Next, Henderson complains that contrary to the ALJ's suggestion that there were no clinical findings related to migraines or headaches, Dr. Jolliff, her treating physician, did note excruciating tenderness to the right occiput.

The medical records actually note "excruciate tenderness >1 cervical paraspinals and R occiput." Tr. 517. Occipital Neuralgia is an inflammatory nerve condition that can cause headaches that feel like severe piercing, throbbing or shock-like pain in the upper neck, back of the head or behind the ears.[7]

The ALJ's opinion does not reference the absence of clinical findings contrary to Henderson's suggestion. He noted that there was no specific description of migraine in the chart notes or in the calendar making special reference to Henderson's pain level, duration, and location.

Finally, Henderson contends that the ALJ failed to consider the impact medications had on her ability function and that the record was replete with evidence showing that Ms. Henderson suffered from migraines/headaches and that it limited her ability to function.

The ALJ specifically noted in the opinion, when Henderson takes her medication (baclofen) between 1-2 pm that she becomes drowsy and leaves work in the afternoon to sleep. Tr. 18. The records also note that baclofen makes her drowsy when she takes it and that her mom would pick her up and drive her home. Tr. 18,  358. The ALJ did considered the impact of her medications as borne out by the record. He further did an exhaustive review of the medicals and referenced the instances in which Henderson reported headaches but concluded that her headaches

---

[7] *See* https://www.aans.org/en/Patients/Neurosurgical-Conditions-and-Treatments/Occipital-Neuralgia.

were not a severe impairment.  The ALJ's finding regarding the severity of Henderson's headaches is based upon substantial evidence.

## VI.    <u>Recommendation</u>

**IT IS RECOMMENDED** that the ALJ's decision denying Amy Smith Henderson's Disability Insurance Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation within **fourteen (14)** days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 13th day of July 2021.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**